In the Matter of Phillip R.
VARISCO, Debtor.

Phillip R. VARISCO, Plaintiff,

v.

OROWEAT FOOD COMPANY, Debtor.

Bankruptcy No. 81–2091.

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Dec. 4, 1981.

Malka Isaak, Tampa, Fla., for plaintiff.

Christopher C. Skambis, Orlando, Fla., for defendant.

### ORDER ON MOTION FOR PRELIMINARY INJUNCTION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a business reorganization case, filed by Phillip R. Varisco, (Debtor), who seeks relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, *et seq.* The specific matter under consideration is a request for temporary and permanent injunction against the Defendant, Oroweat Food Company, (Oroweat). On November 14, 1981, this Court issued a temporary restraining order without notice pursuant to Bankruptcy Rule 765 on a verified complaint and a Motion for Temporary Restraining Order. The Temporary Restraining Order fixed November 25, 1981 as the hearing date to consider whether or not the temporary restraining order should expire or a preliminary injunction should be granted pending trial of the issues on merits. At the scheduled hearing counsel for the parties agreed that there are no relevant facts in dispute and the controversy can be resolved on the stipulated facts as a matter of law. The undisputed facts as they appear from the record are as follows:

Oroweat is a Delaware corporation and is authorized to do business in the State of Florida and it is engaged in baking and distributing bread and other baked goods, principally through a network of franchisees who purchased exclusive marketing and distribution rights from Oroweat limited to specific geographic areas. The Debtor is an individual who on April 25, 1979, purchased from one Harold Semon the right to distribute Oroweat products under a contract entitled "Area Service Agreement." This was, in fact, an assignment to the Debtor by Semon of the original contract between Oroweat and Semon. Under this Agreement, the Debtor agreed to pay $135,000 for the distributorship and paid, upon the execution of a Bill of Sale, $30,000 of the purchase price as down payment and executed a promissory note for the remaining $105,000. On April 30, 1979, the Debtor surrendered the Area Service Agreement to Oroweat and entered into a new Wholesaler's Agreement (Agreement) with Oroweat (Exh. C attached to the complaint). This new Agreement granted the Debtor the exclusive right to distribute baked goods furnished by Oroweat to retail outlets in Hillsborough County, however, excluding Plant City. According to the terms of the Agreement, Oroweat agreed in turn to deliver on consignment sufficient quantities of its products to the Debtor in order to enable the Debtor to supply the retail outlets to be serviced under this Agreement. The Debtor also agreed to pay Oroweat, on a weekly basis, the consignment price of all

goods delivered to and reconsigned by him during the preceding week, and to use his best efforts to oversee the distribution of the goods furnished by Oroweat in the area covered by the Agreement. The Agreement further provided that the Debtor had the right to sell, assign, or transfer his rights under the Agreement, although not without the consent of Oroweat. The Agreement fails to deal with the subject matter of default and fails to furnish definition of that term.

The Debtor became unable to pay for products delivered to him by Oroweat and it is without dispute that by November of 1981 his account with Oroweat was past due and showed an outstanding balance due to Oroweat in the amount of $41,981.43.

On November 5, 1981, Oroweat delivered a letter to the Debtor and advised him that he would have until November 16, 1981 to bring his account current and if he failed to do so on or before the time stated, Oroweat would cancel his franchise. On November 12, 1981 Oroweat sent the Debtor a reminder by mailgram to take care of his obligation and to bring the account current.

On November 9, 1981, the Debtor filed his Petition for Relief under Chapter 11. On November 13, 1981, the Debtor filed his complaint seeking the injunctive relief restraining Oroweat from terminating the Wholesaler's Agreement and cancelling his franchise. In response to the Motion for Temporary Restraining Order, Oroweat filed a Motion to Dissolve the Temporary Restraining Order or in the Alternative to Shorten Time in which to Assume or Reject Executory Contracts.

It is the contention of Oroweat that the Agreement of April 30, 1979 did not create and grant a property right which is property of the estate of the Debtor; therefore, it is not protected by the automatic stay provisions of § 362 of the Bankruptcy Code. In addition, so contends Oroweat, the Agreement was effectively cancelled and terminated in any event prior to the filing of the petition for the Debtor; therefore, under the holding of the Fifth Circuit in the case of *Schokbeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d 171

(5th Cir. 1972), there remained nothing in the executory contract which could be reinstated and assumed; and there is nothing flowing from the contract which can be deemed to be the property of the estate within the meaning of § 541 of the Bankruptcy Code. In support of this proposition Oroweat cites *Trigg v. United States*, 630 F.2d 1370 (10th Cir. 1980) and *In re Beck*, 5 B.R. 169 (D.Ha.1980). In addition, Oroweat contends that the Wholesaler's Agreement is in the nature of a personal service contract which lacks mutuality and as such, not susceptible to specific performance and in turn cannot be enforced by injunctive relief.

In opposition, the Debtor contends that the rights acquired by him under the Agreement are a valuable property right which is property of the estate within the meaning of § 541; that the Agreement was not cancelled prior to the commencement of the Chapter 11 case; that the Agreement is capable of specific performance and enforcement through injunctive relief and he is entitled to the relief sought pending a resolution of the controversy on its merits.

The relief sought is an injunction prohibiting Oroweat to cancel and terminate the franchise. The extraordinary equitable relief of an injunction should be used sparingly, and only where both the right and wrong claimed are clear and the necessity for an injunction is equally clear. *Sharp v. Lucky*, 266 F.2d 342 (5th Cir. 1959). It is the applicant for an injunction who bears the heavy burden of demonstrating that it satisfies all requirements for injunctive relief. *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).

Under criteria for the issuance of a preliminary injunction established by the Court of Appeals for the Fifth Circuit, an applicant must demonstrate that: (1) It has a substantial likelihood of success on the merits; (2) It would suffer irreparable injury if the injunction is not granted; (3) The threatened injury to plaintiffs outweighs the harm of an injunction to defendants; and (4) A preliminary injunction would not disserve the public interest. *Camenisch v.*

*University of Texas,* 616 F.2d 127 (5th Cir. 1980). See also, *Virginia Petroleum Jobbers Association v. Federal Power Commission,* 259 F.2d 921, 925 (D.C.Cir.1958); *Belcher v. Birmingham Trust National Bank,* 395 F.2d 685, 686 (5th Cir. 1968).

▌ Of course, whether or not the right granted by the Agreement is "property of the Debtor's estate" under § 541 of the Bankruptcy Code is a threshold question. This is so because if it is not, the automatic stay provisions of § 362 of the Bankruptcy Code furnish no protection and no aid to the Debtor. Next, if the rights granted by the Agreement are found to be property of the estate, one must consider whether there is still a viable executory contract which could be revitalized by assumption pursuant to the applicable provisions of § 365(b)(1) of the Bankruptcy Code. Lastly, one still must consider whether or not this is the type of executory contract of personal nature which is non-assumable under § 365(c) of the Bankruptcy Code.

▌ Considering these propositions seriatim, it should be helpful to discuss briefly the Code's definition of this term. The term "property of the estate" is defined by § 541 of the Bankruptcy Code and with some exception not relevant here, includes all legal or equitable interest in property of the Debtor as of the commencement of the case; § 541(a)(1). It appears from the legislative history of this Section that the scope of the Section was intended to be broad and was designed to include all kinds of property tangible or intangible, chose of actions, and of course, contract rights and rights based on executory contracts. See, *H.R. 95–595, 95th Cong., 1st Sess. 1977,* p. 367–8; *S.R. 95–989, 95th Cong., 2d Sess. 1978,* p. 82–3, U.S.Code Cong. & Admin. News 1978, p. 5787. There can be no doubt that under this broad definition of the term "property of the estate" a right created by a franchise agreement is property of the estate. *R.S. Pinellas Motel Partnerships v. Ramada Inns, Inc.,* 2 B.R. 113 (M.D. Fla.1979).

Having concluded that the right created by the franchise is property of the estate protected by the automatic stay if it still existed at the time the case was commenced, one must then consider the second question, that is, whether or not this contract was effectively terminated prior to the commencement of the case, therefore, no longer capable of assumption.

The cases cited by the Defendant *Schokbeton, Trigg, Beck,* and *R.S. Pinellas, supra,* are all distinguishable from the case under consideration. *Schokbeton, supra,* was a case brought under the Bankruptcy Act of 1898, which had no provision for curing default as the Bankruptcy Code does. 11 U.S.C. § 365. Also, the contract between the parties specifically provided for termination upon default and notice. Although the notice of termination was not sent until after the Debtor/Plaintiff had filed the petition under Chapter XI, the Debtor did not seek injunctive relief until more than four months later. The Court pointed out the contractual termination provision was unaffected by the filing of the petition and that the Debtor's rights under the contract had evaporated upon receipt of the written notice of termination and could not be revived. *Trigg, supra,* was also brought under the Bankruptcy Act. The case involved oil and gas leases which provided for *automatic* termination upon default. Pursuant to those provisions, the leases terminated before the Debtor had filed an adversary proceeding seeking injunctive relief to prevent the termination. The Court stated that it could not create for the Debtors a right to property which they had already lost through an incurable default. In *Beck, supra,* the parties had entered into an agreement which provided for termination by notice given at least 60 days prior to the date of such termination. The Defendant gave proper notice of termination prior to the date that the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. The effective date of the termination was approximately one month after the Debtor filed. The Court looked to the terms of the Agreement and found that the Agreement had been duly terminated by the notice given prior to the Debtor's filing and the Debtor had no rights which would allow him to extend the Agreement and nothing remained to com-

plete the termination except the mere passage of time.

■ The facts controlling this controversy are different and distinguishable from the facts involved in the cases cited. First, the Agreement had no default provision; it did not define the term of default and merely provided that there should be just cause for termination by Oroweat. The letter delivered to the Debtor on November 5, 1979 merely indicated that the Agreement *will be* cancelled unless the account was brought current by November 16, 1981, but did not state that it was terminated. The mailgram sent on November 12, 1981, was basically to the same effect and did not state that Oroweat considered the Agreement already cancelled. Accordingly, on November 9, 1981, the date the Debtor filed his Petition for Relief his rights under the Agreement, remained intact and he had the right to cure the default and keep the franchise by complying with the demand of Oroweat; on that date there was and there is still a viable executory contract in existence which can be assumed by the Debtor under § 365 of the Bankruptcy Code.

■ It is Oroweat's contention, however, that even assuming this being the case, this Wholesaler's Agreement was a personal service contract and as such not assumable under § 365(c)(1), and due to lack of mutuality, not capable of specific performance and in turn enforcement by injunctive relief, citing *Burger Chef Systems, Inc. v. Burger Chef of Florida, Inc.,* 317 So.2d 795 (Fla. 4th DCA), *cert. denied,* 334 So.2d 603 (Fla.1975). It is without dispute that by virtue of § 365(c)(1)(A), if applicable law excuses a party from accepting performance from or rendering performance to the trustee such executory contract is not assumable or assignable. This proposition is, of course, correct, but its application is limited to executory contracts which are truly personal and this is not really the type of contract involved here. First, there is nothing in the Agreement under consideration which indicates that this was merely a personal service contract based on special trust and confidence and on a special relationship of the parties. The original franchise purchased by the Debtor was not even purchased from Oroweat, but from one Harold Semon who acquired his franchise from Oroweat. The Agreement under consideration was acquired by the Debtor for valuable consideration and the franchise involved in this case is in no way different from franchises involved in numerous cases where the courts uniformly held that, if a franchise involved sale of goods outright, or sale or return, the Agreement is subject to the provisions of Article 2 of the Uniform Commercial Code (UCC). The Official Comment to Article 2 § 2–306 of the UCC states that a contract for output or requirements is subject to the provisions of Article 2 of the UCC and is not too indefinite for lack mutuality of obligation, and an exclusive dealing agreement brings into play all the good faith aspects of the output and requirement problems involved in such context.

In addition, there is a respectable line of cases interpreting franchise agreements which involved sale of goods which held that even though Article 2 of the UCC does not provide for injunctive relief against the seller, the courts have the power to grant the relief and specific performance is a remedy which may be properly accorded in cases of requirement contracts. *Division of the Triple T Service, Inc. v. Mobil Oil Corp.,* 304 N.Y.S.2d 191, 60 Misc.2d 720 (Sup.Ct. 1969); *Warner Motors, Inc. v. Chrysler Motors Corp.,* 5 UCC Rep.Serv. 365 (E.D.Pa. 1968). For instance, in the case of *Campana Pontiac, Inc. v. General Motors Corp.,* 46 Pa.D. & C.2d 486 (1969) the contractual obligation to purchase the parts was based on "dealer selling agreement," a contract which even contained the statement that it was a personal service contract, and the court found that the contract was for the sale of goods; thus, subject to the provisions of Article 2 of the UCC. In the case of *Mastrian v. William Freihofer Baking Co.,* 45 Pa.D. & C.2d 237 (1968), the Court held that § 2–309(3) of the UCC relates not only to sale of goods as the term is defined in § 2–102, but also applies to a "sales distributor agreement." As stated by the District Court in *Warner Motors, Inc., supra,* the fact that the agreement contained terms providing for services no way affect-

ed the character of the contract as determined by its overall objective, namely, in that case, selling automobiles. There is no question that the prime objective of this Agreement was to distribute and sell the goods manufactured by Oroweat. It is equally clear that this Agreement was transferable and assignable, and there is nothing in this record which even indicates that this was really a personal service contract based on trust and confidence which would render it non-assumable under § 365(c)(1)(A). The Supreme Court of Florida in considering a similar question stated in the case of *Wilson v. Sandstrom*, 317 So.2d 732 (Fla.1975), that even assuming that the contract involved some personal service, the Plaintiff was entitled to injunctive relief under the rule that the injunctive power will be used where it is difficult to replace such service and where the damages are inadequate compensation for the loss.

■ Applying the foregoing to the facts involved in the instant case, this Court is satisfied that the Debtor is entitled to the relief sought, that is, a preliminary injunction pending the ultimate resolution of the respective rights of the parties. This conclusion is based on the following: First, having concluded that the Agreement is still a viable and assumable executory contract and may be assumed in the absence of adverse economic factors, it is likely that the Debtor would ultimately be able to preserve this contract. Second, it is evident that if the Debtor's property right flowing from this contract are not protected, he will suffer irreparable harm because he will lose his only asset of any consequence which is clearly indispensable to an effective business reorganization and to the rehabilitation of the Debtor under the aegis of Chapter 11 of the Code. Lastly, it needs no elaborate discussion to point out that the Debtor has no adequate remedy at law.

In light of the fact that preservation of the status quo is necessary, a preliminary injunction shall be issued and remain in effect until there is an ultimate determination on the merits of this controversy.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Debtor's request for a preliminary injunction be, and the same hereby is, granted and pending further order of this Court, the Defendant Oroweat Food Company be, and the same hereby is, enjoined from directly or indirectly in any manner cancelling or terminating the Wholesaler's Agreement between Oroweat Food Company and Phillip R. Varisco, entered into April 30, 1979. It is further

ORDERED, ADJUDGED AND DECREED that this preliminary injunction shall remain in full force under the condition that Varisco shall, pursuant to the terms of the Agreement, pay Oroweat weekly for all consigned goods received since the commencement of the case and in the event Varisco fails to abide by the term imposed herein, Oroweat may apply on short notice for an order vacating and setting aside the preliminary injunction.