**In the Matter of BRONX–WESTCHESTER MACK CORPORATION, Debtor.**

**Bankruptcy No. 80 B 20220.**

United States Bankruptcy Court, S. D. New York.

May 19, 1982.

Frank, Frank, Berger & Goldstein, New York City, for Mack Trucks, Inc. & Mack Financial Corp.

Russo, Lombardi & Frucco, White Plains, N. Y., for Bronx-Westchester Mack Corp.

DECISION ON MOTION TO ASSUME AND ASSIGN DISTRIBUTOR AGREEMENT BETWEEN MACK TRUCKS, INC. and BRONX–WESTCHESTER MACK CORP.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This debtor was previously able to assert the concept of estoppel to bar its distributor

from terminating the distributorship agreement before the debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code. See *In re Bronx-Westchester Mack Corporation* 4 B.R. 730, 6 B.C.D. 581 (Bkrtcy.S.D.N.Y.1980). Now the debtor seeks to apply the principles of assumption and assignment in order to confirm its proposed plan of reorganization because the debtor does not have sufficient capital to continue to operate its business. Therefore, the debtor has applied for an order pursuant to the authority granted under 11 U.S.C. § 365 of the Bankruptcy Code authorizing the debtor to assume its contract with Mack Trucks, Inc. and thereafter to assign the contract to Jamaica Mack Inc., an authorized service dealer of Mack Trucks, Inc.

Mack Trucks, Inc. objects to the debtor's application to assume and assign the distributorship contract because the debtor currently owes approximately $68,000 under the contract; it has not sold a new Mack truck for at least one year and because Mack Trucks, Inc. would like to eliminate this distributorship agreement so that it might be free to restructure the territorial assignments among its other struggling dealers.

### FACTS

1. The debtor, Bronx Westchester Mack Corporation, and Mack Trucks, Inc. entered into a distributorship agreement on December 20, 1965. The debtor filed its petition under Chapter 11 of the Bankruptcy Code on May 27, 1980.

2. The debtor's current management took over the debtor's operations by purchase in October, 1979. The debtor's obligation to Mack Trucks, Inc. under their agreement now amounts to approximately $68,000.

3. Mack Trucks, Inc. wishes to terminate the debtor's distributorship agreement pursuant to paragraph 25(D) of their Agreement which provides in part as follows:

"25. TERMINATION OF AGREEMENT:

.        .        .        .        .

(D) Notwithstanding any of the foregoing provisions, the Company may at its option terminate this Agreement, effective immediately, by delivering to the Distributor written notice of such termination, in the event or happening of any of the following:

1. Default by the Distributor in the payment of any obligation owing to the Company or to Mack Financial Corporation.

.        .        .        .

3. Any sale, transfer, relinquishment, voluntary or involuntary, by operation of law or otherwise, of any substantial interest in the direct or indirect ownership or any substantial change in the operating management of the Distributor as the result of the removal, resignation or withdrawal therefrom of any Principal Owner/Operator named in Section 2 of this Agreement, without prior written approval of the Company.

4. Any dispute, disagreement or controversy among the Principal Owners/Operators named in Section 2 of this Agreement which, in the reasonable opinion of the Company, may adversely affect the operation of the Distributor or otherwise adversely affect the Company.

.        .        .        .

7. The assignment or attempted assignment of this Agreement; or of any interest therein, or any right or obligation thereunder, by the Distributor without the Company's written consent."

4. On April 30, 1982, the debtor entered into a written assignment agreement with Jamaica Mack Inc. The purported assignee is presently an authorized service dealer of Mack Trucks, Inc., but is not authorized to sell trucks; it may only service vehicles and sell Mack Truck parts. By assuming the debtor's distributorship agreement, Jamaica Mack Inc. hopes to acquire the additional right to sell Mack Trucks.

5. Mack Trucks, Inc. objects to the assignment and notes that there are presently

eight Mack Truck sales dealers in New York State and that three are already in Chapter 11 "and a fourth is in dire financial straits and is expected to file." Mack Trucks, Inc. would like to terminate the debtor's territorial franchise so as to realign its sales and distributorship territories in this state for the benefit of the remaining dealers. It objects to Jamaica Mack, Inc. as an assignee of the debtor's distributorship agreement because Jamaica Mack, Inc. is a service and parts dealer and has had no experience in selling new Mack Trucks. More to the point, Mack Trucks, Inc. objects to the fact that as a potential Mack Truck dealer Jamaica Mack, Inc. would be able to take advantage of the discount prices to such dealers for the sale of parts and equipment not otherwise available to parts dealers. Jamaica Mack, Inc. cannot now claim such discount when they purchase parts and equipment for their location in Queens, New York. Moreover, Mack Trucks, Inc. believes that Jamaica Mack, Inc. does not have sufficient capital to purchase trucks on credit from Mack Trucks, Inc.

6. Pursuant to the agreement with Jamaica Mack, Inc., the latter agrees to assume the debtor's obligations under the Chapter 11 plan and to make all of the payments under the plan, as well as assume liabilities incurred by the debtor from the date of confirmation. Jamaica Mack, Inc. also agrees to cure the debtor's defaults under its distributorship agreement with Mack Trucks, Inc. by paying the $68,000 indebtedness by June 30, 1982, when confirmation is projected to take place. The agreement also provides that "[I]n the event confirmation does not take place by June 30, 1982, then at the option of the Assignee at any time thereafter, Assignee shall have a right to cancel this agreement upon ten (10) days' notice to counsel for Assignor . . .".

7. The debtor's plan provides for payment of eight per cent to general unsecured creditors, payable two per cent on confirmation and six per cent payable in two installments of three per cent each commencing six months after confirmation.

8. The unaudited balance sheet of Jamaica Mack, Inc., as of December 31, 1981, reveals total assets of $462,472.45 and liabilities of $347,192.93, leaving an equity of $115,279.52. The personal balance sheet, unaudited, of the principal of Jamaica Mack, Inc. reveals total assets of $1,225,553.02 and no liabilities. There was no evidence to rebut the debtor's position that Jamaica Mack, Inc. was financially capable of curing the defaults under the distributorship agreement with Mack Trucks, Inc. and assuming the debtor's performance under such agreement.

## DISCUSSION

Both parties to the distributorship contract agree that it is executory in nature and that the debtor's right to assume and assign it over the objections of Mack Trucks, Inc. is governed by 11 U.S.C. § 365. Reference must be made first to subsection (f), which provides:

"§ 365. Executory contracts and unexpired leases.

. . . . .

"(f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease."

Subsection (2)(A) requires that the debtor must assume the contract that it seeks to assign. Therefore cross-reference must be made to subsection (b)(1) which delineates

the conditions under which a debtor may assume an executory contract, which are as follows:

"§ 365.  Executory contracts and unexpired leases.

.     .     .     .     .

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease."

The debtor argues that Jamaica Mack's agreement to cure the debtor's financial default under the distributorship agreement and to compensate Mack Trucks for its pecuniary loss constitutes adequate assurance that subsections (A) and (B) under Code § 365(b)(1) will be satisfied.  The debtor also contends that the assignee's superior financial status, as well as its satisfactory status as an authorized service and parts dealer for Mack Trucks, Inc. is adequate assurance of future performance under the distributorship agreement, as required by subsection (C) under Code § 365(b)(1) and by subsection (B) under Code § 365(f)(2). No credible evidence was introduced to rebut the debtor's proof as to these points.

The concept of adequate assurance of future performance has been considered by the courts mainly in the context of landlord-tenant relationships.  Thus, in *Sapolin Paints, Inc.*, 5 B.R. 412, 6 B.C.D. 776 (Bkrtcy E.D.N.Y.1980) a prevailing rental rate three times higher than the lease rate was regarded as "adequate assurance."  In *Lafayette Radio Electronics Corp.*, 7 B.R. 189, 6 B.C.D. 1334 (Bkrtcy E.D.N.Y.1980) the

debtor's "renewed viability" by reason of a sublease to a solvent subtenant satisfied the "adequate assurance" prerequisite.  See also *In re Lafayette Radio Electronics Corp.*, 9 B.R. 993, 4 C.B.C. 2nd 220 (Bkrtcy E.D.N.Y.1981).  Moreover, when a debtor-lessee desired to assign the lease in the face of a use restriction in the lease, it was ruled that the court should focus on the financial condition of the assignee and its ability to meet its financial obligations.  *In re U.L. Radio Corp.*, 19 B.R. 537 (Bkrtcy S.D.N.Y. 1982).  In that case the court did not insist upon literal compliance with all the terms of the lease and permitted a deviation in use from an appliance store to a small bistro known as "Just Heaven" in contravention of a lease clause.  This deviation was authorized by the court in furtherance of the policy favoring assumption and assignment of executory contracts and leases by debtors whose reorganization depends upon retaining rather than forfeiting valuable contract rights.

No deviations from the contract in question are sought in this case since the debtor's assignee desires to cure the debtor's defaults and to continue the course of dealing with Mack Trucks, Inc. in the hope that the assignee will sell more Mack Trucks than did the debtor.  This case is distinguishable from *In re Luce Industries Inc.*, 14 B.R. 529 (D.C.S.D.N.Y.1981) where the District Court did not sustain a debtor's assignment of a trademark license agreement because the District Court characterized the transaction as an assignment of a non-assignable license agreement to a new manufacturer who would not continue the prior approved trade practice; instead there would be "a complete reworking of the procedures under the License Agreement." Additionally the District Court found that no persons or corporations had made a firm commitment to furnish the money to the debtor to pay its obligations.  In this case not only will the assignee, Jamaica Mack, Inc., continue the operations under the distributorship agreement, but it has agreed to pay the debtor's obligation to Mack Trucks, Inc. in full at confirmation.

■ One further point remains for consideration. Code § 365(c)(1)(A) bars a debtor from assigning an executory contract if applicable law excuses a party from accepting performance from or rendering performance to the debtor. This provision relates to executory contracts that are personal in nature. A distributorship or franchise agreement which does not depend upon a special relationship between the parties is not within the reach of this exception. *In re Varisco*, 16 B.R. 634 (Bkrtcy M.D.Fla.1981). In the instant case, as in the *Varisco* case, the original distributorship agreement with Mack Trucks, Inc. was entered into with the debtor's predecessor. The debtor acquired the dealership by purchase. There is no special personal relationship between the parties to the contract in question other than the dealer's ability to sell Mack Trucks and support the operations called for under the contract.

■ The assignee's right to cancel its agreement with the debtor if confirmation does not occur by June 30, 1982 does not present a problem, because a failure to confirm the debtor's plan of reorganization will not prejudice Mack Trucks, Inc. if the debtor's defaults under the distributorship agreement are cured before June 30, 1982. Therefore, the debtor may assume and thereafter assign its distributorship agreement with Mack Trucks, Inc. to Jamaica Mack, Inc. on condition that Jamaica Mack, Inc. assumes the contract (which it has done) and cures the debtor's defaults before June 30, 1982 by compensating Mack Trucks, Inc. in full for all amounts due from the debtor. The assignee's financial status, which is superior to that of the debtor, together with its assumption of the debtor's ongoing obligations will then constitute adequate assurance of future performance.

## CONCLUSIONS OF LAW

1. The debtor may assume its executory distributorship agreement with Mack Trucks, Inc. and thereafter assign it to Jamaica Mack, Inc. because the latter's assumption of the agreement constitutes adequate assurance of future performance as required under 11 U.S.C. § 365(b)(1)(C) and 11 U.S.C. § 365(f)(2)(B).

2. The debtor's assignment of its executory distributorship agreement with Mack Trucks, Inc. is conditioned on the assumption of such contract by the assignee, Jamaica Mack, Inc. and the latter's payment to Mack Trucks, Inc. by June 30, 1982 of all amounts owed to it by the debtor under such contract.

SUBMIT ORDER on notice.