**In re PIONEER FORD SALES, INC., Debtor.**

**Bankruptcy No. 81–00985 P.**

United States District Court, D. Rhode Island.

May 18, 1983.

---

Kathleen Sullivan Murray, Providence, R.I., for Ford Motor Co.

Joshua Teverow, Providence, R.I., for Toyota Village.

## OPINION

PETTINE, Senior District Judge.

In this case Ford Motor Company (Ford) appeals from a decision of the Bankruptcy Court, 26 B.R. 116, authorizing the assignment of a Ford Franchise Agreement to Toyota Village, Inc., Ford seeks to set aside the judgment of the Bankruptcy Court and to terminate the Franchise Agreement between it and Pioneer Ford Sales, Inc. (Pioneer). The Court agrees substantially with the opinion of the Bankruptcy Court, and affirms its decision.

I Facts

On April 2, 1981, Ford entered into a Franchise Agreement with Pioneer. The Franchise Agreement sets forth the terms and conditions under which Pioneer may, as an authorized Ford Dealer, sell Ford motor vehicles and parts and perform warranty service on Ford products. On December 8, 1981, the two principals of Pioneer transferred all of their capital stock to Manchester Ford Sales, Inc., and resigned as officers and directors of Pioneer.

On December 9, 1981, Pioneer filed a petition in bankruptcy under Chapter XI of the Bankruptcy Act of 1978. On December 14, 1981, the Bankruptcy Court entered an order authorizing the execution of a financing agreement between Pioneer and Industrial National Bank, the predecessor of the Fleet National Bank (Fleet). This agreement gave Fleet a security interest in virtually all of Pioneer's assets.

In July, 1982 Fleet sought relief from the automatic stay provisions of the Bankruptcy Act, 11 U.S.C. § 362(a) (1979).[1] The

---

1. 11 U.S.C. § 362(a)(1) provides that the filing of a Chapter 11 petition automatically stays the commencement or continuation, including the issuance or employment of a judicial,

Bankruptcy Court subsequently authorized Fleet to foreclose on its security interest. On August 30, 1982, Fleet filed with the Bankruptcy Court an "Application of the Secured Party for an Order Authorizing the Sale of the Debtor's Ford Franchise to Toyota Village, Inc." The Bankruptcy Court interpreted this application as a petition to assume and assign an executory contract under Section 365 of the Bankruptcy Act. Hearings were held before the Bankruptcy Court on September 23, 24 and October 5, 1982.

On January 5, 1983, the Bankruptcy Court rendered a decision authorizing Fleet to assume the Franchise Agreement between Pioneer and Ford, and to assign this agreement to Toyota Village, Inc. (Village). The Bankruptcy Court's order was subject to two conditions. First, Village and Fleet were required to cure any outstanding default on the Franchise Agreement. Second, the parties were required to select an appropriate new name for the dealership because Ford objected to the sale of Ford vehicles at a dealership known as "Toyota Village".

On January 14, 1983, Ford filed a notice of appeal and a motion for a stay of the Bankruptcy Court's judgment. This Court entered an order on February 23, 1983, granting a stay pending the results of this appeal.

II  Legal Issues

A.  Jurisdiction of the Bankruptcy Court

Ford argues that the Bankruptcy Court lacked jurisdiction to order an assignment of the Franchise Agreement. It bases this argument on the Supreme Court's recent decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *Marathon Pipeline* held that the Bankruptcy Act of 1978 had unconstitutionally vested powers reserved to Article III courts in the bankruptcy courts, which are Article I courts. Ford contends that the power to assign an executory contract falls within

the types of claims that cannot be heard by bankruptcy courts under *Marathon Pipeline.* It argues that:

> The power to assign an executory contract did not exist in the Bankruptcy Law prior to the Bankruptcy Act of 1978. Under that Section, Bankruptcy Judges are authorized to allow trustees to assume and assign executory contracts under certain conditions and provided adequate assurance of future performance by the assignee of such contract or lease is provided. Adequate assurance of future performance is not defined under the Bankruptcy Act. . . .

> The absence of such a definition in the Bankruptcy Act gives carte blanche powers to the Bankruptcy Judge to determine the elements of adequate assurance and unlimited discretion to authorize an assumption and assignment of an executory contract as defined in Section 365. Such unlimited discretion on the part of an Article I judge is subject to abuse and constitutes an unwarranted encroachment upon the judicial power of the United States which the Constitution reserved for Article III Courts.

> Brief of Appellant, Ford Motor at 9–10.

Ford's argument that the Bankruptcy Court lacked subject matter jurisdiction over this case is, in effect, a challenge to the constitutionality of an interim rule adopted by this Court to govern the administration of bankruptcy matters. In response to the Supreme Court's decision in *Marathon Pipeline,* this Court adopted Local Rule 53 to authorize the Bankruptcy Court to act in bankruptcy cases and proceedings until Congress enacts appropriate remedial legislation. Rule 53 essentially revives the old system under which district courts refer bankruptcy cases and "related matters" to the bankruptcy courts and exercise *de novo* review of the decisions of the Bankruptcy Court.

administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the

case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

Ford's contention that Local Rule 53 violates the Constitution, as construed in *Marathon Pipeline,* is without merit. *Marathon Pipeline* did not affect the district court's original jurisdiction over bankruptcy matters. *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 259–261 (6th Cir.1983). The Local Rule does not violate the Constitution because the District Court retains primary jurisdiction over bankruptcy matters, and merely enlists the assistance of the Bankruptcy Court in handling certain bankruptcy matters. The District Court retains authority to revoke the referral of any case to the Bankruptcy Court as well as to modify, in whole or in part, any order or judgment issued by the Bankruptcy Judge. Local Rule 53 does not, therefore, authorize the Bankruptcy Court to hear claims reserved under the Constitution to Article III courts. *See White Motor Corp. v. Citibank, N.A., supra,* (upholding similar interim rule); *In Matter of Braniff Airways,* 700 F.2d 214 (5th Cir.1983) (same); *Color Craft Press, Ltd. v. Nationwide Shopper Systems, Inc.,* 27 B.R. 962 (C.D.Utah 1983) (same).

### B. Assumption and Assignment of the Ford Franchise Agreement

The Bankruptcy Court authorized Fleet to assume the Ford Franchise Agreement and to assign it to Village under Section 365 of the Bankruptcy Act. In this appeal, Ford argues that the Franchise Agreement is a non-assignable "personal" contract under 11 U.S.C. § 365(c)(1).[2] Ford bases this argument on Paragraph F of the Franchise Agreement, which states:

> In view of the personal nature of this agreement and its objectives and purposes, the Company expressly reserves to itself the right to execute a Ford Sales and Service Agreement with individuals or other entities specifically selected and approved by the Company. Accordingly, this Agreement and the rights and privileges conferred on the Dealer hereunder are not transferable, assignable [3] or salable by the Dealer and no property right or interest, direct or indirect, is sold, conveyed or transferred to the Dealer under this agreement. This agreement has been entered into by the Company with the Dealer in reliance (i) upon the representation and agreement that the following person(s), and only the following person(s), shall be the principal owners of the Dealer:

| NAME | HOME ADDRESS | PERCENTAGE OF INTEREST |
|------|------|------|
| Richard D. Perron, | 3 Corte Real Dr., Bristol, R.I. 02809 | 51.0 |
| Richard A. Rosenthal, | 9 Vineland Dr., Barrington, R.I. 02906 | 49.0 |

> (ii) upon the representation and agreement that the following person(s), and only the following person(s), shall have full managerial authority for the operating management of the Dealer in the performance of this agreement:

---

**2.** 11 U.S.C. § 365(c)(1) provides that an executory contract cannot be assigned by the trustee where

> applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or an assignee of such contract or lease, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and such party does not consent to such assumption or assignment.

**3.** The Franchise Agreement may be assigned by the trustee in bankruptcy notwithstanding the express prohibition against assignment. 11 U.S.C. § 365(f)(1) provides.

> Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

| NAME | HOME ADDRESS | TITLE |
|---|---|---|
| Richard D. Perron, | 3 Corte Real Dr., Bristol, R.I. 02809 | Pres.-Treas. |
| Richard A. Rosenthal, | 9 Vineland Dr., Barrington, R.I. 02906 | Vice-Pres./Sec. |

and (iii) upon the representation and agreement that the following person(s), and only the following person(s), shall be the remaining owners of the Dealer:

| NAME | HOME ADDRESS | PERCENTAGE OF INTEREST |
|---|---|---|

The Dealer shall give the Company prior notice of any proposed change in the said ownership or managerial authority, and immediate notice of the death or incapacity of any such person. No such change or notice, and no assignment of this agreement or of any right or interest herein, shall be effective against the Company unless and until embodied in an appropriate amendment to or assignment of this agreement, as the case may be, duly executed and delivered by the Company and by the Dealer. The Company shall not unreasonably withhold its consent to any such change.

---

The Court finds that the Ford Franchise Agreement is not a "personal" contract within the meaning of Section 365(c)(1). It is true that the Franchise Agreement states that Ford entered into that Agreement on the representation that the principals of Pioneer, Richard Perron and Richard Rosenthal, would own and operate the Ford dealership. Nevertheless, section 365(c)(1) requires the Court to go behind the language of the parties' agreement and examine the substance of their relationship. The Court concludes that the Franchise Agreement was not based on "special trust and confidence and on a special relationship of the parties." *See In re Varisco,* 16 B.R. 634 (Bkrtcy.M.D.Fla.1981). Were this the case, Ford would have terminated the Franchise Agreement when Perron and Rosenthal resigned as officers and directors of Pioneer. The fact that it did not suggests that Ford did not view the Franchise Agreement as a personal service contract with Perron and Rosenthal. The Court holds that where, as here, a franchise agreement does not depend upon a special relationship between the parties, that agreement is not a "personal" contract that cannot be assigned under 11 U.S.C. § 365(c)(1)(A). *In re Bronx-Westchester Mack Corp.,* 20 B.R. 139, 143 (Bkrtcy.S.D.N.Y.1982); *In re Varisco,* 16 B.R. 634 (Bkrtcy.M.D.Fla.1981).

Ford also argues that the Bankruptcy Court erred in ordering the assignment of the Franchise Agreement because the trustee did not cure the existing default under the Franchise Agreement or provide adequate assurance that the trustee will promptly cure this default as required by 11 U.S.C. § 365(b)(1)(A).[4] This argument is without merit. The Bankruptcy Court specifically provided that the Franchise Agreement could not be assigned to Village until any existing default on that agreement is cured.

Ford also argues that the Bankruptcy Court should not have ordered the assignment of the Franchise Agreement because Village did not provide adequate assurance of future performance by Village as required by 11 U.S.C. § 365(f)(2)(B).[5] The

---

4. 11 U.S.C. § 365(b)(1)(A) provides:

If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

cures, or provides adequate assurance that the trustee will promptly cure, such default. . . .

5. 11 U.S.C. § 365(f)(2) provides:

The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

House and Senate Reports explaining this section provide:

> The unenforcibility of ipso facto or bankruptcy clauses proposed under this section will require the courts to be sensitive to the rights of the nondebtor party to executory contracts and unexpired leases. If the trustee is to assume a contract or lease, the court will have to insure that the trustee's performance under the contract or lease gives the other contracting party the full benefit of his bargain. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 348 (1977) *reprinted in* [1978] U.S. Code Cong. & Ad.News 5787, 5963, 6304–05; S.Rep. No. 95–989, 95th Cong., 2d Sess. 59 (1978) *reprinted in* [1978] U.S. Code Cong. & Ad.News 5787, 5845.

Ford contends that allowing Fleet to assign the Franchise Agreement to Village will deny it the benefit of its bargain since Village does not meet the working capital requirements of the Franchise Agreement.

This Court finds that Village's record as an established automobile dealership, located within 500 yards of the present Ford dealership, provides Ford adequate assurance of future performance. The president and sole stockholder of Village testified that he is willing and able to fulfill the terms of the Franchise Agreement. There is no evidence in the record to contradict this assertion.[6] In the event that Ford is correct in its contention that Village lacks adequate capital to run a Ford dealership, Ford will have recourse under the Franchise Agreement.

The decision of the Bankruptcy Court is hereby affirmed.

---

**6.** Ford also contends that Fleet should be equitably estopped from assuming and assigning the Franchise Agreement. It argues that Pioneer petitioned the Bankruptcy Court in March, 1982 for an order authorizing Pioneer to terminate the Franchise Agreement, and that it relied to its detriment on this petition. The Court finds that the doctrine of equitable estoppel is inapplicable in this case. After Pioneer filed its Chapter 11 petition, Ford had the authority under the Franchise Agreement to terminate that Agreement. Ford, however, continued to accept performance from Pioneer, and took no steps to terminate the agreement until Fleet petitioned to assume and assign the Agreement. It would be inappropriate to allow Ford to raise the doctrine of equitable estoppel where, as here, it has slept on its rights.