**In the Matter of FULTON AIR SERVICE, INC., Debtor.**

**Benjamin C. ABNEY, Trustee, Plaintiff,**

**v.**

**FULTON COUNTY, GEORGIA, Defendant.**

**Bankruptcy No. 82–04381A.
Adv. No. 83–1079A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Nov. 9, 1983.

Mark A. Kelley, Carr, Abney & Tabb, Atlanta, Ga., for plaintiff.

Paul Webb, Jr., Keith M. Wiener, Webb & Daniel, Atlanta, Ga., for defendant.

## ORDER AND MEMORANDUM OF OPINION

A.D. KAHN, Bankruptcy Judge.

The above-styled complaint was filed by the Trustee against Fulton County seeking a declaratory judgment regarding the assignability of a lease. It is before the Court on cross motions for summary judgment. The facts, for the most part, are not in dispute and can be summarized as follows.

On December 15, 1976, the Debtor and Fulton County entered into a lease for certain improved real property located at Charlie Brown Fulton County Airport. The term of the lease was for thirty years, commencing on January 1, 1978. Paragraph 8 of the lease provided that

> [t]he rights of the Lessee herein shall not be assigned or subject to any other person, firm or corporation, without the specific written consent of Fulton County, nor shall the controlling interest in the corporation presently known as Fulton Air Service, Inc., the lessees herein, pass to any other person, firm or corporation, without the specific written consent of Fulton County, which consent shall not be arbitrarily withheld.

Appendix A, Brief of Fulton County in Support of Motion for Summary Judgment.

Sometime during the first part of 1982, the Debtor became in default under the lease. On August 3, 1982, a letter from Fulton County's attorney was hand delivered to the debtor. It stated, in part, the following: "This notice is given you pursuant to Paragraph 10 of said Lease of December 15, 1976. Please be advised that if this default is not remedied within ten (10) days, the County shall declare the lease

terminated and enter upon the premises and dispossess Fulton Air Service." Exhibit A, Affidavit of W.E. Phillips. There is some dispute about whether Fulton County and the Debtor had worked out an arrangement to make up the amount in default. The Court, however, does not consider those disputed facts to be controlling as to any of the issues now before it.

The Debtor filed for relief under Chapter 11 on September 16, 1982, and a trustee was appointed on December 13, 1982. On April 8, 1983, the Trustee filed an application to sell and assign the lease to Mr. A.J. Waite. Notice requiring that objections be filed with the Court within twenty days was sent to all creditors and parties in interest. Mr. Guy Hill, on April 13, and Fulton County, on April 28, filed objections to the sale and assignment of the lease. The matter was set down for a hearing on May 2, 1983, but Fulton County never received notice of said hearing. At the hearing, the Court ordered that an auction of the lease be held between Mr. Hill and Mr. Waite. This was done, with Mr. Waite being the high bidder. The Trustee then brought the instant adversary complaint against Fulton County for a declaratory judgment on the issue of assignability.

The Court has considered the Trustee's arguments that Fulton County should be precluded from raising any issue in its answer to the instant adversary proceeding which was not raised in its objection to the sale and assignment of the lease filed on April 28, 1983. The Court finds this contention to be unpersuasive. The Court, preferring to dispose of matters on their merits, will consider all issues raised by Fulton County.

### I. Termination of the Lease

■ The threshold question, to wit: was the lease terminated by the letter received by the Debtor on August 3, 1983, must first be considered. For, if the lease was terminated, the issue of assignability is moot, there being nothing to assign. *See, Omni International, Ltd. v. Mimi's of Atlanta, Inc. (In re Mimi's of Atlanta, Inc.)*, 5 B.R. 623 (Bkrtcy.N.D.Ga.1980), *aff'd*, 11 B.R. 710

(N.D.Ga.1981). The Court finds that the lease was not terminated by the letter.

Paragraph 10 of the lease provides that

[f]or an unremedied breach of any of the covenants herein contained, after ten (10) days' notice on the part of the County to the Lessee of said breach, during which ten (10) days Lessee shall have the opportunity to remedy same, *the County shall have the right to declare this lease terminated, and to enter upon the premises and dispossess Lessee.* (emphasis added).

Appendix A, Brief of Fulton County in Support of Motion for Summary Judgment. The underscored language quoted above clearly contemplates that, upon ten days' notice to the Debtor, the County had the *right* to terminate the lease. There is no evidence before the Court that Fulton County ever exercised this right. Fulton County contends that the letter stating ". . . if this default is not remedied within ten (10) days, the County shall declare the lease terminated and enter upon the premises and dispossess Fulton Air Service," effectively terminated the lease. Again, there is no evidence that Fulton County *did* declare the lease terminated or that it entered upon the premises and dispossessed the Debtor.

In light of the above finding, the Court need not address the other contentions raised by the parties with regard to the termination of the lease. Having found the lease still in effect, the Court must now consider the issue of assignability.

### II. Assignment of the Lease

The Trustee contends that the lease is assignable under 11 U.S.C. § 365(f), which provides that

Except as provided in subsection (c) of this section, *notwithstanding* a provision in an executory contract or unexpired lease of the debtor, or in *applicable law*, that *prohibits*, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection. (emphasis added).

Fulton County, on the other hand, argues that § 365(c) prohibits the assignment of this lease without its permission. Section 365(c) provides that

> The trustee may not assume or assign an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
>
> (1)(A) *applicable law excuses* a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or an assignee of such contract or lease, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>
> (B) such party does not consent to such assumption or assignment. (emphasis added).

Fulton County maintains that applicable law excuses it from accepting performance from the Trustee's assignee. First, O.C. G.A. § 6–3–25(3) authorizes counties to establish airports and to

> "[l]ease such airports or landing fields to private parties for operation or lease or assign to private parties for operation, space, area, improvements, and equipment on such airports or landing fields, provided in each case that in doing so the public is not deprived or its rightful, equal, and uniform use thereof."

Fulton County Code § 29–3–74(i) provides that "[l]eases may be assigned or sublet to qualified fixed base operators *only with the approval of the Fulton County Commission.*" (emphasis added). Brief of Fulton County at 6–11.

Second, Fulton County argues that it is excused by applicable law from accepting performance from the Trustee's assignee pursuant to O.C.G.A. § 44–7–1(a), which prohibits the conveyance of a usufruct without the consent of the landlord. Fulton County maintains that the subject lease is a usufruct. *See Southern Airways Co. v. DeKalb Co.,* 216 Ga. 358, 116 S.E.2d 602 (1960). Because of the interpretation of § 365(c) below, the Court does not reach the issue of whether the lease constitutes a usufruct or an estate for years, as the Trustee contends.

The issue before the Court is whether § 365(c) is applicable to the lease in question. Most courts considering § 365(c) have found this provision to apply only to nondelegable personal service contracts. *In re Pioneer Ford Sales, Inc.,* 26 B.R. 116 (Bkrtcy.D.R.I.1983); *In re Haffner's 5 Cent to $1.00 Stores, Inc.,* 26 B.R. 948 (Bkrtcy.N. D.Ind.1983); *In re Bronx-Westchester Mack Corp.,* 20 B.R. 139 (Bkrtcy.S.D.N.Y.1982); *In re U.L. Radio Corp.,* 19 B.R. 537 (Bkrtcy. S.D.N.Y.1982); *In re Boogaart of Fla., Inc.,* 17 B.R. 480 (Bkrtcy.S.D.Fla.1981); *Varisco v. Oroweat Food Co. (In re Varisco),* 16 B.R. 634 (Bkrtcy.M.D.Fla.1981); *In re Taylor Mfg., Inc.,* 6 B.R. 370 (Bkrtcy.N.D.Ga.1980). In other words, these courts have interpreted that an executory contract or an unexpired lease is assignable under the general rule provided in § 365(f) unless it falls under the narrow exception provided in § 365(c). *See, In re Taylor Mfg., Inc.,* 6 B.R. 370, 372. Contracts for the performance of personal services such as a singer, for example, are generally held to fall under this exception.

Fulton County relies on the case of *Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.),* 700 F.2d 935 (5th Cir.1983) in which the Fifth Circuit rejected the narrow interpretation placed upon § 365(c) by the courts above. In reversing the district court, which had followed this narrow interpretation, it reasoned that

> [n]othing in the statute authorized the district court to depart from the express language of § 365(c), which provides for its application to unexpired leases and belies any limitation to personal service contracts.... Surely if Congress had intended to limit § 365(c) specifically to personal service contracts, its members could have conceived of a more precise term than "applicable law" to convey that meaning.

*Id.,* at 943. Fulton County urges the Court to follow the Fifth Circuit holding.

It should be noted that the legislative history is not helpful in construing § 365(c). Reference to personal service contracts does not appear in the history. The drafters did state, however, that "executory contracts requiring the debtor to perform duties *nondelegable* under applicable nonbankruptcy law should not be subject to assumption against the interest of the nondebtor party." Commission Report, H.R.Doc. 137, 93d Cong., 1st Sess., at 199 (1973). (emphasis added). More recent legislative history is even more vague.

> Subsection (c) prohibits the trustee from assuming or assigning a contract or lease if applicable nonbankruptcy law excuses the other party from performance to someone other than the debtor, unless the other party consents. This prohibition applies only in the situation in which applicable law excuses the other party from performance independent of any restrictive language in the contract or lease itself.

Notes of Committee on the Judiciary, S.Rep. No. 989, 95th Cong., 2d Sess., at 59 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5845.

Under the *Braniff* holding, *any* executory contract or unexpired lease would be unassignable if "applicable law" excused acceptance of performance. The question then becomes what does the language "notwithstanding a provision in ... applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection," which appears in § 365(f), mean? The Fifth Circuit's interpretation renders this portion of § 365(f) meaningless.

■ It is a rule of statutory construction that a statute should, if possible, be "construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." 2A Sutherland, *Statutory Construction* § 46.06 at 63 (4th ed. 1973). *See also, National Ass'n. of Re-*

*cycling Indus., Inc. v. I.C.C.,* 660 F.2d 795 (D.C.Cir.1981); *United States v. Blasius,* 397 F.2d 203 (2d Cir.1968); *United States v. Dinerstein,* 362 F.2d 852 (2d Cir.1966). It is also a well established rule of construction that effect is to be given, if possible, to every word of a statute. *United States v. Menasche,* 348 U.S. 528, 538, 75 S.Ct. 513, 519, 99 L.Ed. 615 (1955); *Montclair v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 394, 27 L.Ed. 431.

■ Although, linguistically, § 365(c) and § 365(f) are very similar, the drafters did choose two different words in reference to "applicable law." Subsection (f) pertains where applicable law "prohibits" the assignment of an executory contract or lease. Subsection (c) pertains to situations in which applicable law "excuses" a party from accepting performance under an executory contract or lease. While the Court agrees with the Fifth Circuit that Congress could have chosen words which would have made the meaning of § 365(c) more readily apparent, the Court cannot ignore the distinct use of "prohibits" and "excuses." It is evident that the drafters intended subsection (c) to apply to a different group of executory contracts and leases than that to which (f) applies. The Court agrees with the majority point of view that subsection (f) must be read as the general rule and that subsection (c) must be limited to executory contracts and unexpired leases in which applicable law excuses acceptance of performance such as nondelegable personal service contracts.

In adopting this interpretation, the Court is mindful of Congress' intent to allow a financially distressed entity to reorganize. In many instances, an unexpired lease is the entity's major asset. To deprive it of the benefits which derive from the assignment of such a lease, would be to deprive it of a realistic chance of successfully reorganizing. Furthermore, under the *Braniff* interpretation of § 365(c), any governing authority could promulgate laws which totally prohibit the assumption and assignment of executory contracts or leases, thereby thwarting the legislative purpose of § 365 altogether.

Therefore, for policy reasons, in addition to the reasons above, the Court deems the majority interpretation to be preferable.

■■■ Turning now to the case *sub judice,* the Court finds that the subject lease does not fall under the exception contained in § 365(c). A lease for improved real property does not constitute a contract for nondelegable personal service. *See, In re Haffner's 5 Cent to $1.00 Stores, Inc.,* 26 B.R. 948 (Bkrtcy.N.D.Ind.1983); *In re Boogaart of Fla., Inc.,* 17 B.R. 480 (Bkrtcy.S.D. Fla.1981). The next question is whether the lease is assignable under § 365(f).

Section 365(f)(2) states that

The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

Fulton County maintains that the Trustee cannot meet the requirements of § 365(f)(2) in that Mr. Waite, the proposed assignee, will not perform under the terms of the lease. It contends that Mr. Waite "does not intend to operate a full-fledged fixed base operation at the airport as required by the lease, and that Mr. Waite does not plan to have an employee or anyone physically present manning his business at the Airport on a regular basis during normal business hours." Brief of Fulton County in Support of Motion for Summary Judgment at 18. The Trustee has apparently taken the position that "adequate assurance of future performance" refers only to the payment of rent due under the lease. Trustee's Brief in Support of Motion for Summary Judgment at 13.

■■■ What constitutes adequate assurances of performance depends upon the factual conditions present, and must be determined on a case by case basis. *In re Lafayette Radio Electronics Corp.,* 9 B.R. 993, 998 (Bkrtcy.E.D.N.Y.1981). The Court finds that in this instance, due to the governmental regulation of the leasehold, adequate assurance of performance does not rest alone on the ability of the assignee to pay rent. There are not enough facts presently before the Court for a determination to be made on the issue of adequate assurance. Therefore, an evidentiary hearing on this sole issue shall be held.

■■■ Finally, Fulton County maintains that the assignment of the lease to Mr. Waite would constitute a substantial modification and would require renegotiation under paragraph 16 of the lease. Brief of Fulton County in Support of Motion for Summary Judgment at 20. The Court finds that, assuming adequate assurance of performance is established at the evidentiary hearing, an assignment of the lease to Mr. Waite would not constitute a "substantial modification." The assignment of the lease would simply be a substitution of lessees.

In accordance with the reasoning above, it is the Order of the Court that the Trustee's Motion for Summary Judgment be, and the same is, hereby Granted in part; and

IT IS FURTHER ORDERED that Fulton County's Motion for Summary Judgment be, and the same is, hereby Denied; and

IT IS FURTHER ORDERED that a pretrial conference on the issue of adequate assurance of performance by the proposed assignee, Mr. A.J. Waite, shall be held on the 29th day of November, 1983, at 2:30 P.M., in Courtroom 1776, U.S. Courthouse, 75 Spring Street, S.W., Atlanta, Georgia.