## In re ALLTECH PLASTICS, INC.

### Bankruptcy No. 86–23673–L.

United States Bankruptcy Court,
W.D. Tennessee, W.D.

March 26, 1987.

A.J. Calhoun, Memphis, Tenn., trustee.

John L. Ryder, Memphis, Tenn., for Flouropak Container Corp.

Ellen B. Vergos, James M. Manire, Memphis, Tenn., for Air Products and Chemicals, Inc.

## MEMORANDUM OPINION AND ORDER ON MOTION TO RECONSIDER ORDER, AND ON MOTION OF TRUSTEE TO ASSUME AND ASSIGN EXECUTORY CONTRACT

WILLIAM B. LEFFLER, Bankruptcy Judge.

This cause is before the Court on the Motion of Flouropak Container Corporation

(Flouropak) and the Trustee for reconsideration of this Court's Order of March 6, 1987 which denied the Trustee's Motion to Assume and Assign an Executory Contract. The Court has granted the Motion to Reconsider. It is basing its reconsideration on the briefs and arguments of counsel.

The issue here, as in the prior proceeding, is whether the Chapter 7 Trustee may assume and assign, in exchange for $100,000, a patent license. In its prior Order the Court determined that the license agreement was executory, however, pursuant to the applicable non-bankruptcy law exception to the assignment of executory contracts of 11 U.S.C. § 365(c) and patent law as the Court found it, the Court ruled that the Trustee could not assign the license.

The Court is now called upon to reconsider the issue of patent license assignment in light of the powers granted the Trustee by 11 U.S.C. § 365(f). This is a case of first impression.

The facts may be briefly summarized as follows. Prior to filing its Chapter 7 Petition, the Debtor was formerly in the business of manufacturing specially reinforced plastic containers by the use of a patented procedure known as "Airopak." The Debtor was entitled to use the "Airopak Process" because it was granted a license to do so by the patent holder, Air Products and Chemicals, Inc. (Air Products.) Since the filing of its Chapter 7 Petition, Flouropak has offered to purchase the Debtor's patent license rights for $100,000. This proposition is contested by Air Products, the patentee-licensor, on the grounds that patent law and 11 U.S.C. § 365(c) prohibit such a transfer and that Flouropak can not provide adequate assurance of future performance.

Flouropak contends that the requirement of adequate assurance of future performance has been met by the evidence presented at the original hearing on this matter and that consequently, Section 365(f) empowers the Trustee to assume and assign the license. The controversy here arises from the rule in patent law that patent licenses are generally not assignable.

Therefore, the question becomes whether this rule of patent law is "applicable law" within the meaning of subsection 365(c) or subsection 365(f).

Section 365(f) provides:

(1) Except as provided in subsection (c) of this section, *notwithstanding a provision* in an executory contract or unexpired lease of the debtor, or *in applicable law, that pro* -hibits, restricts or conditions *the assignment of such contract* or lease, the trustee may *assign such contract* or lease under paragraph (2).

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) The trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) Adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease. Emphasis added.

Section 365(c) of the Bankruptcy Code provides in pertinent part:

(c) *The trustee may not assume or assign any executory contract* or unexpired lease *of the debtor,* whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(1)(A) *Applicable law excuses a party, other than the debtor to such contract* or lease *from accepting performance from* or rendering performance to *an entity other than the debtor* or the debtor in possession whether or not such contract, or lease, prohibits or restricts assignment of rights or delegation of duties; and

(B) *Such party does not consent to such assumption or assignment;* .... Emphasis added.

The language of both sections makes it clear than in the bankruptcy context, any transfer restrictions contained in an agreement with the debtor are inapplicable to the trustee. Moreover, subsection (f), but for the subsection (c) exception, renders any such restrictions found in applicable law

non-applicable to the trustee if the provisions of 365(f)(2) are complied with.

■ With respect to subsection (c), relevant case law reveals that "applicable law" which will excuse a nondebtor party to an executory contract from accepting its assignment includes that which protects parties to contracts calling for personal services or the performance of nondelegable duties. See *In the Matter of Fulton Air Service, Inc.*, 34 B.R. 568, 572 (Bankr.N.D. Ga.1983) (lease of airport property); *In re Bronx-Westchester Mack Corp.*, 20 B.R. 139, 143 (Bankr.S.D.N.Y.1982) (distributor agreement); *In re Compass Van & Storage Corp.*, 65 B.R. 1007, 1011 (Bankr.E.D. N.Y.1986) (agency contract); *In re Taylor, Inc.*, 6 B.R. 370, 372 (Bankr.N.D.Ga.1980) (lease of real property). In fact these cases, among others, stand for the proposition that only contracts dependent upon a special relationship, special knowledge, or unique skill or talent fall within the purview of section 365(c). The *Fulton Air Service* case bases its conclusion on a comparison of the language found in subsections 365(c) and (f) as follows:

[a]lthough linguistically, § 365(c) and § 365(f) are very similar, the drafters did choose two different words in reference to "applicable law." Subsection (f) pertains where applicable law "prohibits" the assignment of an executory contract or lease. Subsection (c) pertains to situations in which applicable law "excuses" a party from accepting performance under an executory contract or lease. 34 B.R. 572.

Following this line of reasoning, each of the above cited Chapter 11 proceedings resulted in the allowance of assumption and assignment of the contracts at issue by the trustees. In reaching these results, the Courts determined that the lease, distributorship, and agency agreements did not involve special relationships or nondelegable duties and the assignments were pertinent to the effective reorganizations of the respective debtors.

Similarly, there are several cases which hold that there are nonbankruptcy laws pertaining to more than personal contracts which excuse a nondebtor party from accepting assignment of an executory contract. See, e.g., *In re Nitec Paper Corp.*, 43 B.R. 492 (S.D.N.Y.1984) (federally subsidized electric power); *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir.1983) (F.A.A. regulated airport landing slots); *In re Pioneer Ford Sales, Inc.*, 729 F.2d 27 (1st Cir.1984) (automobile dealer franchise). These courts concur in the determination that section 365(c) is not limited to personal service contracts. In addition, the *Pioneer Ford* court distinguishes subsections 365(c) and (f) by concluding that subsection (f) pertains to laws that enforce contract provisions prohibiting assignment and renders such inconsequential while subsection (c) refers to laws that forbid assignment even when the contract *is* silent. According to that court, those laws "are to be heeded." 729 F.2d at 29.

As pointed out by counsel for Flouropak in their able brief, the cases just cited rely upon federal and state statutes as applicable law which excuses acceptance of assignment by the nondebtor. Therefore, the courts concluded that nonassignment in those cases was statutorily mandated.

From the above discussion, it is apparent that in order for Air Products to be excused from accepting an assignment of this contract, the nature of the performance required thereunder must be nondelegable by applicable law or the non-assignment legally mandated. This calls for an examination of relevant patent law.

Patent law originates with Art. 1, cl. 8, § 8 of the United States Constitution wherein Congress is granted the power "[t]o promote the Progress of Science and Useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." Pursuant to this grant of power, Congress has enacted a series of law concerning patents found at 35 U.S.C. § 101 et seq. These laws promote the stated objective of the Constitution by "offering a right of exclusion for a limited period as an incentive to inventors to risk the often enormous costs in terms of time, research, and development. The produc-

tive effort thereby fostered will have a positive effect on society through the introduction of new products and processes of manufacture into the economy, and the emanations by way of increased employment and better lives for our citizens." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480, 94 S.Ct. 1879, 1885, 40 L.Ed.2d 315 (1974); see also, *Goldstein v. California*, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973).

■ the subject matter necessary to obtain a patent is limited to a "process, machine, manufacture, or composition of matter, or ... improvement thereof" which is novel, useful and non-obvious as those terms are defined at 35 U.S.C. § 101, 102, and 103. The requirement for attainment of a patent are more rigorous than those necessary for copyrights or trademarks. See e.g. *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99 (2d Cir.1951). Once issued, a patent grants the patentee a right of exclusion with respect to his invention for seventeen years. Sections 271 and 281 of Title 35 provide that the patentee may enforce his right of exclusivity by bringing an infringement suit against anyone who, absent authority, produces, "uses or sells" his patented invention within the United States during the term of the patent. Section 261 of Title 35 grants to patents "the attributes of personal property" and to patentees, the right to assign, grant, or convey the patent. A patent assignment pursuant to this section is distinguished from a patent license in that the former is said to be a transfer of the entire patent monopoly while a license grants only limited rights; ordinarily, the right not to be sued for infringement. The rights of the patent owner to license the use of his invention is a creature of federal common law as is the right of the licensee to have the license construed. *L.L. Brown Paper Co. v. Hydroiloid*, 32 F.Supp. 857 (D.C.N.Y.1939), aff'd, 118 F.2d 674 (2d Cir.1941), cert. den. 314 U.S. 653, 62 S.Ct. 101, 86 L.Ed.2d 523 (1941).

■ Given that the above aspects of patent law are matters of federal law, it follows that questions regarding the assigna-

bility of patent licenses are controlled by federal law. Pursuant thereto, albeit federal common rather than statutory law, it has long been the rule that patent licenses are personal and not assignable unless expressly made so. *P.P.G. Industries, Inc. v. Guardian Industries Corp.*, 597 F.2d 1090 (6th Cir.1979), cert. denied, 444 U.S. 930, 100 S.Ct. 272, 62 L.Ed.2d 187 (1979); *Unarco Industries, Inc. v. Kelley Company*, 465 F.2d 1303 (7th Cir.1972) cert. denied, 410 U.S. 929, 93 S.Ct. 1365, 35 L.Ed.2d 590 (1973). Patent licenses convey no proprietary rights in the patent. *Harris v. Emus Records Corp.*, 734 F.2d 1329 (9th Cir.1984) citing *Bell Intercontinental Corp. v. United States*, 180 Ct.Cl. 1071, 381 F.2d 1004 (1967). As stated by the Sixth Circuit in the *P.P.G. Industries* case, "[t]his has been the rule at least since 1852 when the Supreme Court decided *Troy Iron & Nail v. Corning*, 55 U.S. (14 How.) 193, 14 L.Ed. 383 (1852)."

■ It is clear from the foregoing that federal statutory law classifies patents as personal property while federal common law classifies patent licenses as personal in nature and not assignable unless expressly made so. The obvious reason for these classifications is to promote the "Progress of Science and Useful Arts" as required by the Constitution. Given that the rights pursuant to a patent license are personal and nonassignable, it seems logical to conclude that the duties thereunder are also personal and nondelegable.

Consequently, although their nonassignment is not statutorily mandated, the century old common law classification of patent licenses appears to place them within the realm of the types of contracts traditionally associated with section 365(c). As such, in accordance with the interpretations of sections 365(c) and (f) discussed above, the Trustee in this instance does not have the power to assign the patent license absent consent from the licensor for even subsection (f) excepts from its provisions the types of agreements contemplated by subsection (c).

This Court is ever mindful of its responsibility to consider the equities of a case

when rendering a decision. Having considered such in this instance, it recognizes that the ruling in this matter will regrettably result in the Chapter 7 estate's loss of the receipt of $100,000. However, the present facts, unlike those in the above cited cases which allow assignment, involve a proposal by a liquidating, as opposed to a reorganizing, debtor to assign a contract which applicable law clearly classifies as "personal." Therefore, the Court must conclude that, notwithstanding subsection 365(f), both law and equity pursuant to 11 U.S.C. § 365(c) "excuse" the nondebtor party from accepting assignment of the executory contract at issue here.

From the above findings of fact and conclusions of law made pursuant to Bankruptcy Rule 7052, it is HEREBY ORDERED that upon reconsideration of the issue at bar, the motion of Flouropak and the Trustee for reversal of the Court's March 6, 1987 Order in this cause is DENIED.