In the Matter of **FEDERATED DEPART- MENT STORES, INC.,\*** Allied Stores Corporation, et al., Debtors.

Bankruptcy No. 1–90–00130.

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 17, 1990.

See also 121 B.R. 332.

Ronald Barger, Dallas, Tex., for plaintiff.

David Crago, Columbus, Ohio, Robert Millner, Chicago, Ill., for defendant.

## ORDER

J. VINCENT AUG, Jr., Bankruptcy Judge.

This matter is before the Court pursuant to the Motion for Summary Judgment brought by La Salle Street Fund, Inc. of Delaware (hereinafter La Salle or landlord) (Doc.1981); La Salle's Brief in Support

---

\* Editor's Note: This opinion was originally published at 122 B.R. 313. It is republished here to correct filing date.

(Doc.1982); La Salle's Supplemental Brief in Support of Motion for Summary Judgment (Doc.2026); Montgomery Ward, Inc.'s Memorandum in Opposition to La Salle's Motion (Doc.2050); and Debtors' Reply to La Salle's Motion (Doc.2053). A hearing was held on October 25, 1990.

The parties stipulated that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

The underlying dispute here concerns the Debtors' Motion for Authority to Assume and Assign their twenty-five year lease and operating agreements at the Valley View Shopping Center in Dallas, Texas, to Montgomery Ward, Inc. for $5 million. The mall is owned by La Salle Street Fund, Inc. and the lease agreement was executed August 1, 1982. Debtors' department store, Bloomingdale's, vacated its leased space at Valley View on August 18, 1990. La Salle opposes the proposed lease assignment to Montgomery Ward for various reasons and has refused to consent to the transfer. The lease agreement also contains provisions restricting and conditioning the assignment of the lease to a third party.

At the hearing the Court denied La Salle's summary judgment motion and instructed that this written decision would follow. The Court then conducted an evidentiary hearing to determine adequate assurance of future performance, pursuant to 11 U.S.C. § 365(f)(2)(B) and § 365(b)(3). The parties are to submit proposed Findings and Fact and Conclusions of Law by December 14, 1990. The Court then will rule on the Debtors' request to assign the lease.

This decision deals solely with La Salle's motion for summary judgment, which the Court denies for the reasons stated below.

For purposes of its motion for summary judgment, La Salle contends that the Bankruptcy Code, specifically 11 U.S.C. § 365(c)(1)(A), honors Texas contract law, which prohibits the proposed lease assignment if La Salle withholds its consent. However, the Debtors assert that federal bankruptcy law, specifically § 365(f)(1), abrogates the Texas contract law and the

lease agreement's anti-assignment language. The Debtors contend that § 365(f)(1) allows assignment if the conditions of § 365(f) and § 365(b)(3) are met, including adequate assurance of future performance by assignee Montgomery Ward.

The central Code section in dispute, § 365(c)(1)(A), states in pertinent part:

> (c) The trustee [which includes the debtor in possession] *may not assume or assign* ... any executory contract ... if ... (1)(A) *applicable law excuses* a party, other than the debtor, to such contract ... from accepting performance from ... an entity other than the debtor or the debtor in possession ... and (B) such party does not consent to such assumption or assignment ... (emphasis added).

The term "applicable law," emphasized in the above Code section, is at the heart of this conflict over statutory interpretation. La Salle contends that Tex.Prop.Code Ann. § 91.005 (Vernon 1984) is "applicable law" under § 365(c)(1)(A). Section 91.005 provides:

> During the term of a lease, the tenant may not rent the leasehold to any other person without the prior consent of the landlord.

La Salle maintains this statutory rule prohibiting subletting also forbids assignment. *In re Lile*, 103 B.R. 830, 839–40 (Bankr.S.D.Tex.1989), citing *Dillingham v. Williams*, 165 S.W.2d 524, 526 (Tex.Civ. App.—El Paso 1942, writ ref'd w.o.m.).

The Debtors argue that the Texas law does not fall under § 365(c)(1)(A) and the Court should decide the propriety of the proposed assignment under § 365(f)(1) which provides as follows:

> *Except as provided for in subsection (c)* of this section, *notwithstanding* a provision in an executory contract or unexpired lease of the debtor, or in *applicable law*, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection. (emphasis added).

From the outset the Court is hampered by a Code section that is ambiguous, as "applicable law" is not defined in § 365(c) and its legislative history offers little guidance. *In re Fulton Air Service, Inc.*, 34 B.R. 568, 572 (Bankr.N.D.Ga.1983).

Because of the uncertainty, courts have been asked to reconcile § 365(c), which "excuses" an objecting party from accepting an assignment if "applicable law" precludes it, and § 365(f), which allows for assignment notwithstanding "applicable law" that "prohibits" it, except as provided in § 365(c). To add to the mix, the Court is sensitive to the congressional policy favoring assignments. The Bankruptcy Court in the case of *Fulton, Id.* at 572–573, aptly expressed this concern:

> The Court is mindful of Congress' intent to allow a financially distressed entity to reorganize. In many instances, an unexpired lease is the entity's major asset. To deprive it of the benefits which derive from the assignment of such a lease, would be to deprive it of a realistic chance of successfully reorganizing.

La Salle urges the Court to adopt the plain meaning of "applicable law" and to hold that § 365(c)(1) includes any applicable nonbankruptcy law that excuses a party from accepting performance from someone other than the debtor.

The Debtors cite several lower court cases which suggest that § 365(c)(1) should be limited to personal service contracts, but La Salle successfully refutes that argument by reference to three federal appeals court cases, *In re West Electronics, Inc.*, 852 F.2d 79, 83 (3rd Cir.1988); *In re Pioneer Ford Sales, Inc.*, 729 F.2d 27, 29 (1st Cir.1984); and *In re Braniff Airways, Inc.*, 700 F.2d 935, 943 (5th Cir.1983). These appellate courts have not interpreted § 365(c)(1) so narrowly as to confine it to personal service contracts.

Debtors also argue that § 365(c)(1) should except a lease from assignment primarily in cases where the "applicable law" involves overriding public policy concerns. The Court finds merit in this argument.

Two federal appeals court cases which held that § 365(c) excused acceptance both involved "applicable law" of overriding public policy significance. In *Braniff*, 700 F.2d at 941, public air traffic safety was at risk. The "applicable law" in *Braniff* were federal regulations which gave the administrator of Washington's National Airport sole authority to decide which carriers could lease space at the airport. Braniff tried to assign its lease to Pacific Southwest Airlines over the airport's objection. The Fifth Circuit Court of Appeals held that applicable federal law excused the National Airport administrator from accepting performance from Pacific Southwest Airlines. Consequently, Braniff could not assign the lease without the administrator's consent.

The Third Circuit case of *In re West Electronics, Inc.*, 852 F.2d 79, concerned 41 U.S.C. § 15, which required the government's consent to an assignment in a situation of obvious public importance—the production of military equipment. The dispute in *West Electronics* concerned a debtor's proposed assumption of a contract to supply a substantial number of AIM–9 missile launcher power supply units to the Air Force. The Court of Appeals held that the federal law was "applicable law" pursuant to § 365(c)(1) which excused the government from forced acceptance of the contract.

> We conclude that assignment of a contract calling for the production of military equipment *is precisely what Congress intended to prevent when it prohibited assignments in 41 U.S.C. § 15. . . .* It therefore necessarily follows that under 11 U.S.C. § 365(c)(1) West, as a debtor in possession, cannot assume this contract. (emphasis added) *Id.* at 83.

Unlike *West Electronics,* the Texas contract law at issue here is precisely what Congress did *not* intend to protect when it enacted § 365(c). La Salle wants this Court to elevate Texas contract law to the kind of law that regulates important public rights, such as the public air safety in *Braniff,* or the regulation of government contracts for production of military equipment, as in *West Electronics.* In contrast

the Texas law here deals with private rights between parties with no overriding public policy implications. Indeed, the interests which the Texas law protects are the proper care of the leasehold and payment of rent. *Heflin v. Stiles,* 663 S.W.2d 131, 134 (Tex.Ct.App.1983).

Further, La Salle's interpretation of § 365(c)(1) runs contrary to congressional intent favoring lease assignments. *In re Howe,* 78 B.R. 226, 230 (Bankr.D.S.D.1987), quoting *In re Evelyn Byrnes, Inc.* 32 B.R. 825, 829 (Bankr.S.D.N.Y.1983). By La Salle's reasoning, any governing authority could promulgate laws which totally prohibit the assumption and assignment of executory contracts or leases, thereby thwarting the legislative purpose of § 365 altogether. *Fulton,* 34 B.R. at 572.[1]

La Salle relies upon another appellate court case, *In re Pioneer Ford Sales, Inc.,* 729 F.2d 27 (1st Cir.1984), which this Court finds unpersuasive because the thrust of the decision dealt with an adequate assurance analysis, which is not at issue in this motion. In *Pioneer Ford* the Court reversed an order allowing assignment of an automobile franchise to a substitute dealer. The Rhode Island law in that case, R.I.Gen. Laws § 31–5.1–4(C)(7), allowed a motor vehicle manufacturer to veto an assignment of a franchise if the veto is reasonable. The Court categorized the law as falling within § 365(c)(1), but most of the discussion about § 365(c)(1) pertained to why § 365(c)(1) is not confined to personal service contracts, although the contract appeared to have the flavor of a personal service contract anyway.

In addition, the Court notes that § 365(f)(1) applies with special force in respect to assignments of shopping center leases. Although § 365(f)(1) requires a showing of adequate assurance of future performance before any executory contract or unexpired lease may be assigned, Congress enacted a special provision, § 365(b)(3), to deal with adequate assur-

ance in regard to shopping center leases. Consequently, § 365(b)(3) provides a specific analytical scheme for protecting the interests of shopping center landlords, while expressly contemplating that shopping center leases could be assumed and assigned. We therefore find that § 365(b)(3) provides La Salle with all the protections it is due under the Bankruptcy Code. *In re Joshua Slocum, Ltd.,* 99 B.R. 261, 266 (Bankr.E.D. Pa.1989).

The fact that Congress carved out a special category for shopping center leases in the Bankruptcy Code is further indication that Congress recognized such leases as potential major assets of a debtor, sometimes essential to a debtor's reorganization. Section 365 reflects a "clear Congressional policy favoring assumption and assignment of executory contracts and leases." *In re Howe,* 78 B.R. at 230. All these facts militate against La Salle's view that Congress enacted § 365(c) to enable any state law to easily extinguish a shopping center lease's assignability.

In summary, on the basis of the prevailing federal appellate cases, and because of the Bankruptcy Code's special statutory framework for shopping center leases contained in § 365(b)(3), the Court finds that § 365(f)(1) applies to this case, not § 365(c)(1). Accordingly, La Salle's Motion for Summary Judgment, brought pursuant to Fed.R.Civ.P. 56 and Bankruptcy Rule 7056, is hereby DENIED.

IT IS SO ORDERED.

---

1. The Bankruptcy Court in *Fulton* confined § 365(c) to excepting nondelegable personal service contracts from assignment, rejecting the Fifth Circuit Court of Appeal's broader view in *Braniff,* 700 F.2d at 943, that (c) also applies to other contracts. This Court concurs with the *Braniff* holding on that issue. Nevertheless, much of the other analysis in *Fulton* applies in the instant case.